CREIGHBAUM, Plaintiff in error, V. STATE, Defendant in error.

*April 11—May 9, 1967.*

18

22

For the plaintiff in error there was a brief and oral argument by *Robert H. Friebert,* public defender.

For the defendant in error the cause was argued by *Betty R. Brown,* assistant attorney general, with whom on the brief were *Bronson C. La Follette,* attorney general, and *William A. Platz,* assistant attorney general.

HANLEY, J. Two issues are presented on this appeal:

1. Does the failure of the trial court to advise on the potential sentence compel a reversal as a matter of law?

2. Applying the totality of circumstances test, were the waiver of counsel and the pleas of guilty freely, voluntarily and understandingly made?

Defendant contends that the failure to advise him of the possible maximum penalty he might receive under the charges brought against him compels a reversal as a matter of law, not because the defendant did not know, but simply because the trial court failed to so state.

In support of his contention, the defendant first cites *State ex rel. Burnett v. Burke* (1964), 22 Wis. (2d) 486, 126 N. W. (2d) 91, for the correct proposition that this court formulated therein a desirable procedure recommended for the use of trial courts before accepting waivers of counsel and pleas of guilty.

The recommended procedure reads in part as follows, at page 494:

"2. To establish the accused's understanding of the nature of the crime with which he is charged and the range of punishments which it carries."

However, in the subsequent case of *State ex rel. Kline v. Burke* (1965), 27 Wis. (2d) 40, 45, 133 N. W. (2d) 405, this court said:

". . . Merely because all the precautionary steps recommended in *Burnett* may not have been followed does not render constitutionally tainted an acceptance of waiver of counsel and a plea of guilty. . . ."

The federal court similarly concluded that *Burnett, supra,* involves only suggested safeguards. That court in *Horwath v. Burke* (D. C. Wis. 1965), 236 Fed. Supp. 674, said:

"The trial court, on arraignment and plea, did not take all the steps proposed by the Supreme Court of Wisconsin as means of ascertaining the voluntariness and

understanding with which the waiver of counsel and plea of guilty were made. See State ex rel. Burnett v. Burke, 22 Wis. 2d 486, 126 N. W. 2d 91 (1964), and State ex rel. Drankovich v. Murphy, 248 Wis. 433, 22 N. W. 2d 540 (1946). *Failure to take the additional precautionary safeguards does not establish that petitioner's constitutional rights were violated.* See Aiken v. United States, 296 F. 2d 604, 607 (4th Cir. 1961) ; Bagley v. Washington State Board of Prison Terms and Paroles, supra." (Emphasis supplied.)

See also *Kline v. Burke* (D. C. Wis. 1965), 239 Fed. Supp. 798, 799.

The defendant attempts to escape this seemingly conclusive language by a very unique consideration of the cases dealing with withdrawals of guilty pleas. The cases are divided into pre-*Burnett* pleas versus post-*Burnett* pleas. The defendant correctly concludes that the cases involving a plea of guilty coming prior to *Burnett, supra,* have all been handled by applying the "totality of the circumstances" test, *i.e.,* this court considered all of the circumstances in determining whether or not a guilty plea was voluntary.

Defendant Creighbaum then argues that the post-*Burnett* cases, namely, *State v. Strickland* (1965), 27 Wis. (2d) 623, 135 N. W. (2d) 295, and *Eskra v. State* (1965), 29 Wis. (2d) 212, 138 N. W. (2d) 173, by their very language created a wholly new approach in the consideration of guilty pleas.

It is only some of the language which may be relied upon because the actual holding of *Strickland, supra,* and *Eskra, supra,* was that the later appearance of trial counsel in the case waived any defects whether or not they be founded on constitutional rights. In neither case did this court hold that the pleas were involuntarily or unintelligently made. The language in *State v. Strickland, supra,* relied on heavily by the defendant reads, at page 629 :

"Furthermore, if an accused is not represented by counsel, it is the *duty* of the trial court before accepting a plea of guilty to make sure that the accused understands the nature of the crime with which he is charged and the range of punishments." (Emphasis supplied.)

Similar language directed to the conduct of trial courts is found in *Eskra, supra,* which states at page 218:

"It is also undoubtedly true that before accepting a plea of guilty, it is *necessary,* particularly when the defendant is not represented by counsel, to make sure that accused understands the nature of the crime with which he is charged and the range of punishments." (Emphasis supplied.)

Although the above-quoted language is meaningful and seemingly not obscure, in neither case does the court state what procedural consequence attaches if the trial court fails to follow the suggested safeguards.

If the court intended such failure to result in a reversal as a matter of law, it would have so stated clearly and concisely.

Moreover, in *Rafferty v. State* (1966), 29 Wis. (2d) 470, 474, 138 N. W. (2d) 741, this court held the plea of guilty was intelligently and voluntarily entered even though the trial court as shown by the record failed to determine explicitly the extent of the defendant's education and also failed to alert the accused that a lawyer might be of service in discovering defenses or mitigating circumstances. The court, in so holding, said:

". . . A review of the record makes it apparent that counsel was waived and the plea of guilty entered freely, voluntarily, and understandingly. That is all that justice and due process require. *State ex rel. Kline v. Burke* (1965), 27 Wis. (2d) 40, 45, 133 N. W. (2d) 405."

The importance of the above language is that it demonstrates clearly that this court did not compel or even consider compelling a reversal by law, but, in fact, made a determination upon the record as a whole.

Another case which completely opposes the proposition of the defendant is that of *State v. Pierce* (1966), 33 Wis. (2d) 104, 146 N. W. (2d) 395.

In that case, the trial court did not follow the *Burnett* recommendations. Although the trial court in *Pierce* did advise the defendant on the range of punishment, the judge did not ascertain whether any promises or threats had been made to the accused and also did not ascertain the extent of the defendant's educational background. This court weighed all of the factors and concluded that there was an intelligent waiver of counsel. This court also ordered that the matter be remanded to the trial court for a specific finding of fact as to the issue of inducement. The court did not compel a reversal as a matter of law, but determined that a hearing was in order.

To get around this case, it seems that the defendant would have to take the untenable position of arguing that it is less of a defect if the trial court fails to ascertain whether any threats or promises were made than if the trial court fails to advise on the range of punishments. This court has never made any such appraisal.

No case, federal or state, is cited wherein the court held that there would be a reversal as a matter of law if the trial court failed to advise on the range of punishment.

Defendant takes us through the foregoing arguments in an attempt to persuade the court that the failure of the trial court to advise on the hypothetical maximum sentence possible upon conviction is a violation of the defendant's constitutional rights.

Proceeding with the defendant's argument, it follows that if the failure to advise is a violation of a constitutional right, and if the failure to advise is shown on the record, then the defendant would be able to withdraw his guilty plea as a matter of right. *Van Voorhis v. State* (1965), 26 Wis. (2d) 217, 223, 131 N. W. (2d) 833; *State v. Strickland, supra; Mueller v. State* (1966), 32

Wis. (2d) 70, 145 N. W. (2d) 84; *State v. Koerner* (1966), 32 Wis. (2d) 60, 145 N. W. (2d) 157. But as the brief of the state points out, a discussion on how to best guarantee a constitutional right does not of itself create that constitutional right. If the circumstances, as gleaned from the whole record (including any post-conviction hearings), demonstrate that a defendant is aware of the range of punishment, no violation of a constitutional right can be predicated upon the failure of the trial judge to expressly and explicitly advise on the range of punishment.

The constitutional right involved is not that one must be advised of the range of punishment, but is that one may not be convicted on a plea of guilty following a waiver of counsel when said waiver and plea are not freely, voluntarily, and understandingly made. This would violate the due-process clause of the Fourteenth amendment.

It may be true, as defendant contends, that the totality of circumstances test when used to determine what a defendant knew is open to criticism because it utilizes subjective judgment which can never be more than speculation even though the subjective judgment be based on certain objective evidence found in the record as a whole.

However, in *Spanbauer v. Burke* (7th Cir. 1966), 374 Fed. (2d) 67, decided December 28, 1966, the circuit court of appeals affirmed the district court's denial of a petition for a writ of *habeas corpus*. The court, in *Spanbauer,* said at page 74 of the opinion:

". . . A preponderance of the evidence is not created by allegations and a showing that the state court trial judge did not literally fulfill all elements of a formula describing his responsibilities for acceptance of waiver of counsel. *Substance rather than form is the guiding criterion for reviewing courts.*" (Emphasis supplied.)

And it would clearly be a triumph of form over substance were this court to hold that a reversal as a matter

of law was compelled because "all elements of a formula" were not precisely followed.

Ordinarily the question of withdrawal of a guilty plea is addressed to the discretion of the trial court. The trial court's decision will not be disturbed on appeal unless an abuse of that discretion is shown. *Myartt v. State* (1964), 25 Wis. (2d) 634, 131 N. W. (2d) 371, certiorari denied, 382 U. S. 855, 86 Sup. Ct. 107, 15 L. Ed. (2d) 93; *State v. Payne* (1964), 24 Wis. (2d) 603, 604, 129 N. W. (2d) 250; *Pulaski v. State* (1964), 23 Wis. (2d) 138, 143, 126 N. W. (2d) 625, certiorari denied, 379 U. S. 862, 85 Sup. Ct. 124, 13 L. Ed. (2d) 65; and *La Fave v. State* (1940), 233 Wis. 432, 441, 289 N. W. 670.

The only exception to this rule is where the petitioner establishes a denial of a relevant constitutional right. Under that situation withdrawal is a matter of right. *Van Voorhis v. State, supra; State v. Strickland, supra;* and *Mueller v. State, supra.*

In any event, the burden of proof to show either a denial of a relevant constitutional right or an abuse of discretion is on the petitioning defendant. *Van Voorhis v. State, supra,* and *Mueller v. State, supra.*

Having determined that the failure to advise on the hypothetical total maximum punishment possible is not a violation of a defendant's constitutional rights and that the burden of proof is on the defendant, it is now necessary to determine under the totality of circumstances test whether or not the defendant's waiver of counsel and pleas of guilty were freely, voluntarily, and understandingly made.

The record is entirely clear that the trial judge repeatedly informed the defendant of his right to counsel and also his right to court-appointed counsel if the defendant was indigent. The court fully complied with sec. 957.26 (2), Stats., and thus the burden of proof is upon the defendant to show that his waiver was not

freely, voluntarily, and intelligently made. *Van Voorhis v. State, supra.*

Defendant contends that because all of the *Burnett, supra,* inquiries were not made his waiver of counsel and pleas of guilty were not intelligently made. The trial court not only asked the defendant about the extent of his education (defendant had a high-school education) but lengthy discussions with the court also revealed defendant's general comprehension and past experience.

The defendant understood that the charges against him were both felonies, were extremely serious, and that conviction could result in imprisonment. The defendant was informed by the district attorney that no promises could be made on the length of sentence.

Creighbaum also knew even more about the crime of burglary for he had been sentenced in the past to three years' imprisonment on a prior burglary charge.

As to the nature of the charge of aggravated battery, the defendant was put on notice of the seriousness of the charge when the district attorney delayed drafting the information until he was satisfied that the victim of the robbery would live.

It is totally inconceivable that the defendant might confuse the instant charge of aggravated battery with an earlier battery charge. In the earlier fracas involving the use of clubs in a barroom fight the defendant broke the nose of another man and was penalized by a $50 fine.

In the instant action, defendant, while in the process of burglarizing a grocery store, found it necessary to twice viciously strike Steindorf with a wrecking bar. Only after a successful operation for a severe skull fracture was it clear that the victim would survive. It must have occurred to defendant, a high-school graduate with an extended criminal record, that such savagery would result in a long term of confinement.

Although it may not have been appropriate for the trial court to conclude that prisoners are conversant on the

subject of sentences, and also that they relate such information to each other, it was equally wrong for the defendant to assume that all burglary convictions resulted in a three-year sentence. As a matter of fact, the court record of his previous sentence reveals that the judge informed him that three years was a light sentence for burglary. It was further wholly unrealistic that the defendant believed that he could only receive up to six months in jail on the charge of aggravated battery.

The record discloses that the defendant, Creighbaum, expected to go to prison, and it seems that his real complaint is with the severity of his sentence. Disappointment in sentencing is no ground for obtaining leave to withdraw a guilty plea. *Pulaski v. State* (1964), 23 Wis. (2d) 138, 147, 148, 126 N. W. (2d) 625.

We are of the opinion that trial courts ought to advise any accused as to the maximum total sentence that could possibly be imposed upon conviction. However, in the instant case the trial court did not abuse its discretion in denying the defendant's request for allowance to withdraw his guilty plea, nor did the defendant establish in fact the denial of a relevant constitutional right.

The defendant was not even sentenced to the maximum possible for the reduced offenses for which he was charged.

Defendant Creighbaum has in no way asserted his innocence. He was sentenced only after the trial court was apprised of all the mitigating factors.

The trial judge held upon the hearing of the post-conviction motions that he was satisfied that the absence of counsel did not injure the defendant in regard to the discovery and presentation of mitigating factors.

The defendant, in his brief, mentions that the trial court did not inform the accused that counsel might be of service in discovering possible defenses.

However, in the instant case, the charges were not complicated, and it seems that the defendant intelligently

chose to plead guilty to reduced charges. Again, the record shows that defendant was not in any way prejudiced by his lack of counsel.

The fact that the defendant confessed to the crimes in open court should hardly work to the detriment of the state.

The last contention of the defendant is that he was induced to waive counsel and plead guilty. The trial court made a specific finding, after the hearing on the post-conviction motions, that there was evidence that the waiver of counsel and the pleas were not induced.

It was defendant's argument that as a result of an alleged conversation with a jailer he (defendant) came to believe that his girl friend and her children would be held in jail until his case was finished. No evidence was produced in support of this allegation, and the trial judge held that even if such a conversation had taken place, it in no way affected defendant's waiver of counsel and pleas of guilty because the conversation took place after the defendant had refused counsel and indicated his desire to plead guilty.

We conclude from an application of the totality of circumstances test to the record in this case that the defendant, Creighbaum, freely, voluntarily, and intelligently waived his right to counsel and freely, voluntarily, and intelligently pleaded guilty to the charges of burglary and aggravated battery and that the defendant has not met his burden of proof.

In reaching the above conclusion the court considered the federal court decision [1] reversing the conviction of "Stroetz" in *State ex rel. Stroetz v. Burke* (1965), 28 Wis. (2d) 195, 136 N. W. (2d) 829, and concluded that the *Stroetz Case* is distinguishable from the instant case. Stroetz was sentenced and committed under the Sex Deviate Law which, in effect could amount to life im-

---

[1] *Stroetz v. Burke* (D. C. Wis. 1967), 268 Fed. Supp. 912.

prisonment. The federal court also found a complete lack of understanding of the penalties by the defendant.

We call the attention of all trial courts to the inquiries formulated in *Burnett, supra,* with respect to the waiver of counsel and plea of guilty and urge compliance with them.[2]

*By the Court.*—Order affirmed.

---

[2] *Browne v. State* (1964), 24 Wis. (2d) 491, 511, footnote 23, 129 N. W. (2d) 175, 131 N. W. (2d) 169.